# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# <u>SAN ANTONIO DIVISION</u>

| | | |
|---|---|---|
| ACULON, INC., | § | |
| | § | |
| *Plaintiff and Counterclaim Defendant,* | § | |
| | § | |
| v. | § | |
| | § | |
| ELECTROLAB, INC., | § | |
| | § | CIVIL ACTION NO. 5:23-cv-00720-XR |
| *Defendant,* | § | |
| | § | |
| and | § | |
| | § | |
| E9 TREATMENTS, INC., | § | |
| | § | |
| *Defendant and Counterclaim Plaintiff.* | § | |

# DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON
# <u>PLAINTIFF'S FIRST CAUSE OF ACTION FOR CORRECTION OF INVENTORSHIP</u>

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................1

II.     SUMMARY OF ARGUMENT................................................................2

III.    BACKGROUND STATEMENT OF UNCONTESTED FACTS................................3

IV.    ARGUMENT ....................................................................................4

      A.    The provisional discloses everything in Electrolab's five original patents.......4

      B.    Aculon's testimony falls short of what the law requires. ....................................5

          1. Electrolab conceived and reduced to practice before filing the provisional. 5

          2. Electrolab approached Aculon after the invention was complete and on sale..........................................................................6

          3. Electrolab's named inventors are presumed to be correct. ............................7

          4. Testimony about alleged contribution to the specification is irrelevant........8

          5. Glycol is irrelevant to Aculon's joint inventorship case. .............................12

          6. Aculon's correction of inventorship case fails because it does not relate to the patent claims. ...............................................................13

      C.    Aculon cannot meet its burden to corroborate its joint inventorship claims.13

      D.    Aculon's joint inventorship claims are barred by the statute of limitations..15

V.     ABSENCE OF A GENUINE DISPUTE COMPELS SUMMARY JUDGMENT.....18

VI.    CONCLUSION .................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ........................................................................................................ 18

*Burroughs Wellcome Co. v. Barr Labs., Inc.*,
    40 F.3d 1223 (Fed. Cir. 1994) ....................................................................................... 8

*Caterpillar Inc. v. Sturman Indus., Inc.*,
    387 F.3d 1358 (Fed. Cir. 2004) ............................................................................... 7, 10

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ........................................................................................................ 17

*Coleman v. Dines*,
    754 F.2d 353 (Fed. Cir. 1985) ....................................................................................... 13

*Continental Can Co. USA v. Monsanto Co.*,
    948 F.2d 1264 (Fed. Cir. 1991) ..................................................................................... 18

*E.I. Du Pont De Nemours & Co. v. Unifrax I LLC*,
    921 F.3d 1060 (Fed. Cir. 2019) ...................................................................................... 8

*EmeraChem Holdings, LLC v. Volkswagen Grp. of Am., Inc.*,
    859 F.3d 1341 (Fed. Cir. 2017) ..................................................................................... 12

*Falko-Gunter Falkner v. Inglis*,
    448 F.3d 1357 (Fed. Cir. 2006) ...................................................................................... 8

*Gemstar TV Guide Int'l, Inc. v. Int'l Trade Comm'n*,
    383 F.3d 1352 (Fed. Cir. 2004) ............................................................................... 11, 13

*Gen. Elec. Co. v. Wilkins*,
    750 F.3d 1324 (Fed. Cir. 2014) ...................................................................................... 7

*Hess v. Advanced Cardiovascular Sys., Inc.*,
    106 F.3d 976 (Fed. Cir 1997) ......................................................................................... 7

*HIP, Inc. v. Hormel Foods Corp.*,
    66 F.4th 1346 (Fed. Cir. 2023) ............................................................................ 7, 11, 13

*Intermec Tech. Corp. v. Palm Inc.*,
    738 F.Supp.2d 522 (D. Del. 2010), *aff'd*, 466 F.App'x 881 (Fed. Cir. 2012) ........................ 10

*Jones v. R.R. Donnelley & Sons Co.*,
    541 U.S. 369 (2004) ...................................................................................... 17

*Kimberly-Clark Corp. v. Procter & Gamble Dist. Co., Inc.*,
    973 F.2d 911 (Fed. Cir. 1992) ................................................................... 5, 14

*Linear Technology Corp. v. Impala Linear Corp.*,
    379 F. 3d 1311 (Fed. Cir. 2004) ...................................................... 12, 13, 14

*Little v. Liquid Air Corp.*,
    37 F.3d 1069 (5th Cir. 1997) ........................................................................ 18

*Medichem, S.A. v. Rolabo, S.L.*,
    437 F.3d 1157 (Fed. Cir. 2006) .................................................................... 13

*Nartron Corp. v. Schukra U.S.A., Inc.*,
    558 F.3d 1352 (Fed. Cir. 2009) .................................................................... 11

*Pannu v. Iolab Corp.*,
    155 F.3d 1344 (Fed. Cir. 1998) .................................................................... 11

*Pfaff v. Wells Elecs.*,
    525 U.S. 55 (1998) .......................................................................................... 8

*Price v. Symsek*,
    988 F.2d 1187 (Fed. Cir. 1993) .................................................................... 13

*Trovan, Ltd. v. Sokymat SA*,
    299 F.3d 1292 (Fed. Cir. 2002) .................................................................... 11

*Univ. of Pittsburgh v. Hedrick*,
    573 F.3d 1290 (Fed. Cir. 2009) ...................................................................... 8

**RULES**

Fed. R. Civ. P. 11(b)(3) .................................................................................... 14

Fed. R. Civ. P. 12(b) ........................................................................................ 17

Fed. R. Civ. P. 24(a)(2) .................................................................................... 20

Fed. R. Civ. P. 56 ......................................................................................... 1, 17

**STATUTES**

28 U.S.C. § 1658 .................................................................................................................17

35 U.S.C. § 112 ..................................................................................................................10

35 U.S.C. § 116 ....................................................................................................................5

35 U.S.C. § 256 ..................................................................................................................17

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff's (Aculon) First Cause of Action seeks correction of inventorship on seven patents owned by Defendant e9 Treatments. First Amended Complaint ("FAC") at ¶¶ 127-256 (ECF 47). Aculon seeks to add two of its employees as joint inventors with the inventors named on e9's patents. *Id.* at ¶ 132. Because Defendants' (collectively Electrolab) named inventors had fully completed the claimed invention before ever meeting with Aculon, the correction-of-inventorship cause of action is impossible to support. For this and the other grounds stated below, Electrolab moves for summary judgment under Fed. R. Civ. P. 56 on Aculon's First Cause of Action for Correction of Inventorship. Electrolab requests a hearing on this motion.

## I.  INTRODUCTION

The Court may recall the August 31, 2023 hearing on Electrolab's Motion to Dismiss portions of Aculon's Complaint – a hearing made pointless by Aculon's surprise offer to belatedly file a First Amended Complaint and address the problems raised in Electrolab's Motion. At the hearing, Aculon referred to its correction of inventorship cause of action as "the primary focus of the case," stated that "the primary, the most important aspects of this case relate to the correction of inventorship of these seven patents," and that "correction of [inventorship on] the patent[s] is by far the top issue." 8/31/23 Hearing Transcript at 4:5, 7:3-5, and 10:8-12 (ECF 48). This Motion therefore deals with heart of Aculon's Complaint.

Electrolab has produced its early relevant documents, which demonstrate without any doubt that not only was Electrolab in sole possession of all the features of the claimed invention, but that Electrolab had also proven that the invention worked in a very successful experimental, months-long field-test in the real world with a third-party customer. Electrolab had filed a provisional patent application for its invention which demonstrates without dispute that Electrolab

believed it had completed its invention. Electrolab was selling its invention commercially. All of this happened <u>before</u> Electrolab met with or had any input from Aculon, making rubbish out of Aculon's false representations to the Court that Electrolab needed help because they "couldn't get it to work." 8/31/23 Hearing at 4:24-5:2 and 7:23 (ECF 48).

## II.     SUMMARY OF ARGUMENT

There are four independent grounds for summary judgment. The first ground is established by an unchallengeable government record and Aculon's admission. The second ground is established by undisputed deficiencies in Aculon's witnesses' expected testimony. The third ground is established by the undisputed absence of legally required corroborating evidence. The fourth ground is established by undisputed timing of certain events and the statute of limitations.

<u>First</u>, Electrolab was in sole possession of the complete claimed invention in its five original patents at least by February 28, 2013 – the date that Electrolab filed a provisional patent application for the invention (the "provisional"). The provisional discloses everything in all issued claims of Electrolab's five original patents. Aculon admits that it could not have contributed anything to Electrolab's invention before June 21, 2013. Aculon cannot "jointly" make an invention that Electrolab had already completed.

<u>Second</u>, portions of Electrolab's seven patents have disclosure (the words explaining the invention) that Aculon's personnel are expected to testify that they contributed. None of these witnesses' testimony can establish that their contributions appear in any issued patent <u>claim</u> limitation that Electrolab had not already invented. The contributions that Aculon is expected to allege are found in the patent specification (the textual part of the patent before the claims), but not in any issued patent claim. In patent law, it is beyond dispute that an inventive contribution

must be found in the issued <u>claim</u>. Contribution to the specification of the patent, or to pending but deleted application claims, does not count for inventorship.

<u>Third</u>, it is well-established in patent law that a supposed joint inventor must corroborate his allegations with independent evidence. This requirement is intended to keep charlatans from offering up only their testimony as support for spurious inventorship claims. Electrolab asked Aculon to produce its independent corroborating evidence. No such evidence was produced.

<u>Fourth</u>, the federal statute of limitations for Aculon to raise a joint inventorship claim in court is 4 years. Aculon expressly raised its joint inventorship disputes in written notices to Electrolab in April 2016. The parties contested their inventorship disputes throughout 2016 with multiple exchanges of letters and filings in the United States Patent and Trademark Office ("USPTO"). Aculon knew about its joint inventorship claims at least by August 28, 2018. Aculon waited more than four years to file this lawsuit which is now time-barred by limitations.

These four summary judgment grounds are independent, meaning that if any one of them prevails, summary judgment should be granted. For the reasons given below, the material facts supporting all four summary judgment grounds are not subject to genuine dispute.

### III.    BACKGROUND STATEMENT OF UNCONTESTED FACTS

1. Electrolab filed a provisional patent application for its invention on February 28, 2013.

2. That application discloses everything in the claims of Electrolab's five original patents.

3. Aculon admits that it contributed nothing to the challenged patents before June 21, 2013.

4. Aculon's testimony relates only to the specifications of Electrolab's seven patents.

5. There is no independent evidence to corroborate Aculon's joint inventorship testimony.

6. Aculon knew the full scope of its joint inventorship dispute before September 2, 2018.

## IV.    ARGUMENT

Aculon challenges inventorship on seven of Electrolab's patents. FAC at ¶¶ 127-256 (ECF 47). The patents fall into two categories: "five original patents," and "two CIP patents." The five original patents are: U.S. Patent Nos. 9,476,754, 9,688,926, 10,059,892, 10,150,924, and 10,934,497. The two CIP patents are discussed more in Section B below.

### A.    The provisional discloses everything in Electrolab's five original patents.

Electrolab's provisional was filed on February 28, 2013. Declaration of Sean Drees[1] (hereinafter "Drees" or "Drees Declaration") at ¶ 4 and Ex. 1. Aculon admits that its alleged contributions were not made before June 21, 2013. Drees at ¶¶ 65, 66 and Exs. 51 at Response No. 3 and 52 at Response No. 2. Therefore, Aculon could not possibly have contributed anything to the provisional.

The provisional discloses every claim limitation that Aculon challenges in Electrolab's five original patents. Drees at ¶ 33 and Ex. 34. The basis for this summary judgment ground is established simply by comparing the challenged claim limitations in the five original patents to the disclosure in Electrolab's provisional. This comparison is laid out in the charts attached as Exhibit 34 of the Drees Declaration. The patent claim limitations that Aculon challenges are highlighted on the left, the disclosure from the provisional is on the right. The Court may start with Chart No. 1 (for U.S. Patent No. 9,476,754), which is only one page, to see just how baseless Aculon's joint inventorship case is. The other charts, Nos. 2-5, follow the same pattern as Chart

---

[1] Some exhibits to the Drees Declaration are marked "Confidential" under the Protective Order in this case. Electrolab asserted the Confidentiality designations when producing documents. Although the documents are confidential, Electrolab makes a limited waiver of its protection for these exhibits only, to avoid filing under seal. Should Aculon request to use an Electrolab Confidential document in a public Response, Electrolab will promptly review the document, and approve public filing if the document is of the same type and sensitivity as the exhibits to the Drees Declaration.

No. 1 and need the Court's brief review to confirm that Electrolab's invention was fully disclosed in the provisional.[2]

Joint invention requires some form of collaboration. 35 U.S.C. § 116; *Kimberly-Clark Corp. v. Procter & Gamble Dist. Co., Inc.*, 973 F.2d 911, 917 (Fed. Cir. 1992) ("[w]hat is clear is that the statutory word 'jointly' is not mere surplusage . . . there must be some element of joint behavior, such as collaboration"). "Individuals cannot be joint inventors if they are completely ignorant of what each other has done until . . . after their individual independent efforts [are complete]." *Id.* (rejecting joint inventorship claim because alleged joint inventors knew nothing of the named inventor's work and contributed nothing to it). Aculon's supposed joint inventors were completely ignorant of the provisional on February 28, 2013. The provisional discloses all challenged claim limitations in Electrolab's five original patents. Aculon's personnel cannot be joint inventors.

### B.    Aculon's testimony falls short of what the law requires.

#### 1.    Electrolab conceived and reduced to practice before filing the provisional.

Electrolab's three inventors conceived the idea for the patented invention in May 2012 and fully reduced it to practice with a successful experimental field-test spanning from July 2012 into 2013 before filing their provisional patent application. Drees at ¶¶ 18-33.

In 2012 Electrolab was in the business of supplying level sensors to customers in the oil and gas industry. Drees at ¶ 18. Those sensors were used to determine liquid oil levels in oil field storage tanks. Some customers experienced repeated and rapid buildup of gunk on the sensors. The gunk included paraffins (wax) and/or asphaltenes (the heaviest molecules in crude oil that

---

[2] Electrolab will also provide to chambers a binder of the patents having larger claims and a separate binder with the provisional to assist the Court in making the side-by-side comparison.

when separated during the refining process are used to make roads). Drees at ¶ 18. That buildup

led to measurement errors and required costly cleaning or replacement. Drees at ¶ 18.

In the summer of 2012, Electrolab found that if it thoroughly cleaned and dried the metal

surfaces of its sensors and then applied "Nano-ProTek wipes" sold by DEK, Inc., the stickiness of

paraffins to stainless steel was reduced. Drees at ¶ 18. Electrolab knew that the effective compound

in the Nano-ProTek wipes formed a self-assembled monolayer of phosphonate, or SAMP, on the

metal surfaces of its sensors. Drees at ¶ 20. To see if this discovery would hold up in the real world,

Electrolab treated two of its commercial sensors and installed them in a customer's oil field tanks.

Drees at ¶ 21. The installation happened in July 2012. Drees at ¶ 21. Electrolab monitored the

performance of the "prototype" sensors, found that the treatment with the Nano-ProTek wipes

prevented buildup of paraffins and asphaltenes, and realized that the improvement was dramatic.

Drees at ¶ 22. Electrolab's monitoring also revealed that the treatment survived in the harsh

conditions often experienced in oil field equipment. Drees at ¶¶ 23, 25.

Because of the promising results from the still ongoing field-test, and due to impending

commercialization, Electrolab filed the provisional patent application for its invention on February

28, 2013. Drees at ¶ 33. Electrolab then offered the invention for sale to its customers beginning

on April 1, 2013. Drees at ¶ 26.

> **2.  Electrolab approached Aculon after the invention was complete and on sale.**

While exploring ways to bring manufacturing costs down, Electrolab sought access to the

SAMP chemical that was in DEK's Nano-ProTek wipes. By the end of March 2013, Electrolab

had learned that Aculon supplied the SAMP chemical to DEK. Drees at ¶ 34. Electrolab contacted

Aculon to see if Aculon would supply the SAMP chemical to Electrolab. Drees at ¶ 34. Electrolab

then met with Aculon in San Diego on June 19, 2013.[3] Drees at ¶ 36. During this meeting, Electrolab shared the invention in great detail, including how Electrolab had used the Nano-ProTek wipes to treat Electrolab's sensors. Drees at ¶ 36. Electrolab shared with Aculon the positive test results seen in its experimental field-test where Electrolab proved that the invention was fully operational with a commercial customer. Drees at ¶ 36. At that point the experimental field-test had run successfully for almost a year. Drees at ¶ 36. Electrolab told Aculon that it was already selling a commercial application of the invention. Drees at ¶ 36. Electrolab even disclosed the manufacturing processes that Electrolab implemented to treat its sensors. Drees at ¶ 36. In the June 19 meeting, Electrolab asked Aculon to use a slower-drying solvent with its SAMP product so that Electrolab could treat sensors outdoors during the hot Texas summers. Drees at ¶ 37. Aculon admits that Electrolab initiated this request. Drees at ¶ 53. Aculon eventually began supplying Electrolab with a product named NC-SLO in October 2013 that had been re-formulated using glycol as the slower-drying solvent that Electrolab requested.[4] Drees at ¶ 38.

### 3. Electrolab's named inventors are presumed to be correct.

Electrolab's five original patents name three Electrolab personnel as joint inventors. Electrolab's two CIP patents, U.S. Patent Nos. 10,822,558 and 10,844,299, name four Electrolab personnel as joint inventors. "[T]he issuance of a patent creates a presumption that the named inventors are the true and only inventors." *HIP, Inc. v. Hormel Foods Corp.*, 66 F.4th 1346, 1350 (Fed. Cir. 2023) (reversing district court correction of inventorship) quoting *Gen. Elec. Co. v.*

---

[3] Aculon incorrectly identifies the date of this meeting as June 21, 2013. FAC at ¶¶ 40-44 (ECF 47).

[4] The glycol solvent was publicly disclosed in Aculon's MSDS for NC-SLO, Drees at ¶ 38. Therefore, Aculon's Second Cause of Action claim to be "the owner of trade secrets including . . . the use of a glycol carrier," Original Complaint at ¶ 204 (ECF 1), was as baseless as Aculon's joint inventorship case.

*Wilkins*, 750 F.3d 1324, 1329 (Fed. Cir. 2014). "The burden of proving that an individual should have been added as an inventor to an issued patent is a 'heavy one.'" *Id.* at 1350 (citing cases). "[A]n alleged joint inventor must prove a claim of joint inventorship by 'clear and convincing evidence.'" *Id.* (quoting *Hess v. Advanced Cardiovascular Sys., Inc.*, 106 F.3d 976, 980 (Fed. Cir 1997)); *see also Caterpillar Inc. v. Sturman Indus., Inc.*, 387 F.3d 1358, 1377 (Fed. Cir. 2004).

"Conception is the touchstone of inventorship." *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1227-28 (Fed. Cir. 1994). Conception is the formation in the mind of the inventor of the definite and permanent idea of the invention. *E.I. Du Pont De Nemours & Co. v. Unifrax I LLC,* 921 F.3d 1060, 1075 (Fed. Cir. 2019); *Univ. of Pittsburgh v. Hedrick*, 573 F.3d 1290, 1293, 1297-98 (Fed. Cir. 2009) (denying joint inventorship claim where named inventors completed conception of the claimed invention before the alleged co-inventors made any contribution). An invention conceived in the mind of the inventor is complete when it is "reduced to practice." *Pfaff v. Wells Elecs.*, 525 U.S. 55, 66 (1998); *Falko-Gunter Falkner v. Inglis*, 448 F.3d 1357, 1367 (Fed. Cir. 2006). Actual reduction to practice occurs when the inventor constructs an embodiment or performs a process that meets all the limitations of the claim and determines that the invention will work for its intended purpose. *Du Pont,* 921 F.3d at 1075. Filing a patent application counts as constructive reduction to practice. *Id*.

### 4. Testimony about alleged contribution to the specification is irrelevant.

Even if the Court beams itself into Aculon's fictional world where Electrolab had not already completed its patented inventions before Aculon was involved, the correction of inventorship case still fails. That is because Aculon relies on disclosure in the patent specification to support its case, and the specification is irrelevant for joint inventorship proof.

Aculon's alleged inventive contributions are numerous, but they follow a consistent pattern that reveals an attempted sleight-of-hand. The first mentioned of its "inventive contributions" in Aculon's First Amended Complaint relates to Electrolab's U.S. Patent No. 9,476,754. FAC at ¶¶ 137-138 (ECF 47); Drees Ex. 3 (the '754 patent). In ¶ 137 of the Complaint, Aculon quotes an actual first limitation in claim 1 of Electrolab's '754 patent and then asserts that further description of the limitation is found in column 4, lines 26-31 of the specification (this brief will use a 4:26-31 style notation for brevity). In the next paragraph of the Complaint, ¶ 138, Aculon alleges that *its inventive contributions* appear in text at 4:26-31. The referenced text is in the '754 patent *specification* and is *not part of claim 1.*

In ¶ 139 of its Complaint, Aculon quotes a second limitation in claim 1 of Electrolab's '754 patent and then identifies where in the patent specification, 4:32-33, further description of that limitation is found. In the next paragraph, ¶ 140, Aculon states that *its inventive contributions* appear in text at 4:32-33. As in its preceding allegation, Aculon's alleged inventive contributions are in the '754 patent *specification* and not in the patent claim. Aculon follows this pattern throughout the rest of its Complaint. *See, e.g.*, FAC at ¶¶ 141-146, 154-157, 165, 173-179, 200-203, 214-218, 220, 232-235, and 244-253. Aculon's responses to Electrolab's interrogatory to "[i]dentify all inventive contributions" follow the same pattern. Drees Ex. 51 at Responses to Interrogatory No. 2.[5] The crux of this pattern is that Aculon contributed to the specification, the specification supports the claims, therefore Aculon must have contributed to the claims.

How any Aculon material appeared in Electrolab's issued patent specifications, when the provisional was filed before Electrolab had any contact with Aculon, is a result of customary patent

---

[5] Aculon did not include page numbers on its Interrogatory Responses. Cites are therefore to the Response No.

practice. A "provisional" patent application is only filed with the USPTO and is never examined or prosecuted. A provisional application cannot become a patent. For an inventor to proceed further toward a patent, the inventor must file a "regular" patent application within one year of the provisional filing date.

Electrolab filed its regular patent application on December 6, 2013, which is after October 2013 when Aculon started supplying Electrolab with its NC-SLO formulation. Drees at ¶¶ 38, 39. NC-SLO contained glycol as the slower-drying solvent that Electrolab had requested. Drees at ¶ 38. Electrolab's named inventors disclosed glycol in the specification of their regular patent application because inventors are required to disclose the "best mode" of practicing their invention, 35 U.S.C. § 112 ¶ 1 (pre-AIA), regardless of how they learned of it. Disclosing someone else's information in the specification of a patent does not make them a joint inventor. That is not how patent law works, and considering a simple hypothetical will make it plainly apparent why.

Consider Henry Ford. He imagines how to build a car (conception). He then makes the car that he imagined, and he drives it around to see if it works (reduction to practice). Then he files a provisional patent application for his car (constructive reduction to practice). Then, while out on a celebratory drive, he meets Mr. Prestone. Henry tells Mr. Prestone that he is using alcohol as a coolant in the radiator to keep the water from freezing in the winter, but that the alcohol evaporates too fast when the car is running. Henry asks Mr. Prestone for a slower evaporating coolant, and Mr. Prestone suggests ethylene glycol. Henry Ford tries ethylene glycol as a coolant and it works better, so when Henry Ford files his regular patent application, he discloses the ethylene glycol as a possible coolant in the patent specification. This complies with the best mode requirement. Henry's patent issues without an ethylene glycol coolant limitation in any of his patent claims. Henry's patent simply claims a car, the thing that he invented by himself. Henry is the sole

inventor. Mr. Prestone is not a joint inventor and cannot horn in on Henry's patent claims to a car simply because Mr. Prestone, responding to Henry's request, suggested the use of ethylene glycol.

Patent law dictates the result in the hypothetical above. An inventive contribution is judged by what is claimed, and not by what is in the specification. *Caterpillar*, 387 F.3d at 1378 (affirming rejection of inventorship claim where alleged contribution was in specification but not claimed); *see also Intermec Tech. Corp. v. Palm Inc.*, 738 F.Supp.2d 522, 563 (D. Del. 2010), *aff'd*, 466 F.App'x 881 (Fed. Cir. 2012) ("[I]nventorship is determined by contribution to the claims, not to the specification."); *Gemstar TV Guide Int'l, Inc. v. Int'l Trade Comm'n*, 383 F.3d 1352, 1381-82 (Fed. Cir. 2004) ("[I]nventorship is determined on a claim-by-claim basis . . . [the analysis requiring] a comparison of the alleged contributions of each asserted co-inventor with the subject matter of the correctly-construed *claim* to determine whether the correct inventors were named.") (emphasis added) (*citing Trovan, Ltd. v. Sokymat SA*, 299 F.3d 1292, 1302 (Fed. Cir. 2002)); *Nartron Corp. v. Schukra U.S.A., Inc.*, 558 F.3d 1352, 1357-1358 (Fed. Cir. 2009) (an alleged inventor's contribution is insignificant when the specification and claims of the patent-in-suit primarily focus on the named inventors' invention, and the specification mentions the alleged contribution only once in a twenty-column patent); *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1351 (Fed. Cir. 1998) (identifying the three requirements to qualify as a joint inventor: (1) must "contribute in some significant manner to the conception or reduction to practice of the invention," (2) must "make a contribution to the *claimed invention* that is *not insignificant* in quality, when that contribution is measured against the dimension of the full invention," and (3) must "do more than merely explain to the real inventors well-known concepts and/or the current state of the art") (emphasis added); *HIP*, 66 F.4th at 1350 (applying three-part *Pannu* test).

Aculon's "inventive contributions" are irrelevant because they are not related to the issued patent claims. To any extent that there is overlap between disclosure in the specification of Electrolab's patents that Aculon identifies as a contribution and limitations in the issued patent claims, an overlap does not make Aculon's personnel joint inventors. At least by February 28, 2013, Electrolab had already invented any overlapping limitations that are in its issued patent claims. Aculon cannot re-invent Electrolab's already completed invention.

### 5.     Glycol is irrelevant to Aculon's joint inventorship case.

Glycol was discussed in the August 31, 2013 hearing. 8/31/2023 Transcript at 6, 9 (ECF 48). Aculon's live Complaint makes inventorship contentions about glycol. FAC at ¶¶ 42, 45-46, and 63-67 (ECF 47). For example, Aculon alleges that "Dr. Hanson of Aculon made inventive contributions to the claimed subject matter added in claim 2 [of U.S. Patent No. 9,688,926] in the glycol carrier-based composition developed by him and encompassed by the claim." FAC ¶ 159. The huge problem with Aculon's allegation is that claim 2 does not mention glycol. Aculon made similar "we invented glycol" allegations about other patent claims. FAC at ¶¶ 163 and 165 (ECF 47). Glycol was disclosed in the specification of U.S. Patent No. 9,688,926, at 3:64, 4:11, and 6:13, but glycol is not in any issued claim of the '926 Patent. Drees at ¶ 56. None of Electrolab's six other challenged patents have glycol in any issued claim limitation either. Drees at ¶ 56. That undisputed fact makes Aculon's glycol evidence irrelevant to its correction of inventorship case. Perhaps that is why Aculon did not mention glycol as an inventive contribution in its responses to Electrolab's interrogatories. Drees Ex. 51 at Interrogatory Response No. 2.

6.    **Aculon's correction of inventorship case fails because it does not relate to the patent claims.**

Aculon's testimony about "inventive contributions" to the specifications of Electrolab's seven patents is irrelevant and is not evidence of joint inventorship, which dooms its correction of inventorship case.

C.    **Aculon cannot meet its burden to corroborate its joint inventorship claims.**

The case law is clear that a person who avows to be a joint inventor must back his claim up with independent corroborating evidence. *Linear Technology Corp. v. Impala Linear Corp.*, 379 F. 3d 1311, 1327 (Fed. Cir. 2004). A supposed inventor's testimony alone is not sufficient. *EmeraChem Holdings, LLC v. Volkswagen Grp. of Am., Inc.*, 859 F.3d 1341, 1346 (Fed. Cir. 2017) ("[I]nventor[] testimony, standing alone, is insufficient to prove conception – some form of corroboration must be shown" to safeguard against inventors who might otherwise "be tempted to remember facts favorable to their case"); *Gemstar-TV Guide*, 383 F.3d at 1382 (alleged joint inventors must "prove their contribution to the conception [of the invention] with more than their own testimony concerning the relevant facts"). Furthermore, the "testimony of one co-inventor cannot be used to help corroborate the testimony of another." *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1171 (Fed. Cir. 2006); *see also, Price v. Symsek*, 988 F.2d 1187, 1194-95 (Fed. Cir. 1993). An alleged inventor must provide some independent evidence to corroborate their contribution to the conception of the invention as claimed. *Coleman v. Dines*, 754 F.2d 353, 360 (Fed. Cir. 1985). The corroboration requirement helps "prevent fraud, by providing independent confirmation of the [alleged] inventor's testimony," and provides "an additional safeguard against courts being deceived by [alleged] inventors who may be tempted to mischaracterize the events of the past through their testimony." *Medichem*, 437 F.3d at 1171.

"Whether the [alleged] co-inventor's testimony has been sufficiently corroborated is evaluated under a 'rule of reason analysis,' which requires that an 'evaluation of *all* pertinent evidence must be made so that a sound determination of the credibility of the inventor's story may be reached.'" *Linear*, 379 F.3d at 1327 (emphasis in original) quoting *Price*, 988 F.2d at 1195. "Reliable evidence of corroboration preferably comes in the form of records made *contemporaneously* with the inventive process." *Linear*, 379 F.3d at 1327 (emphasis added).

The Drees Declaration attaches the kind of corroborating evidence required.[6] The documents show a collective effort where the Electrolab joint inventors collaborated. The effort spans a period of time and includes communications with disinterested corroborating witnesses, some from third-party companies. Of most importance, the exhibits are *contemporaneous* records of the events. This is the kind and weight of documentary evidence that Aculon needs to support a joint inventorship case. Such documents should have been easy for Aculon to locate because they were a required part of Aculon's attorneys' determining, before filing this lawsuit, that their "factual contentions have evidentiary support" under Fed. R. Civ. P. 11(b)(3).

On July 14, 2023, Electrolab served an interrogatory for Aculon to identify "all documents that corroborate or have evidence of each inventive contribution" made by Aculon. Drees at ¶ 65 and Ex. 51 at Interrogatory No. 4. Aculon did not identify any documents as requested by the interrogatory and responded that it would provide "evidence of each inventive contribution . . . in the production of documents." Drees at ¶ 65 and Ex. 51 at Response No. 4. Aculon produced no documents dated before February 28, 2013 when Electrolab had already invented the five original

---

[6] The Electrolab inventors do not need to present any corroborating evidence. They are presumed by law to be correct inventors. *See, HIP*, 66 F.4th at 1350. The Drees Declaration proves how much falsity there was in Aculon's attorney's representations to the Court that Electrolab "couldn't get it to work," 8/31/23 Hearing at 4:24-5:2 and 7:23 (ECF 48) and had to run to Aculon for help.

patents. None of the other documents that Aculon produced have any evidence of a joint collaborative effort with Electrolab's named inventors about issued patent claim limitations, as is required. *Kimberly-Clark*, 973 F.2d at 917 ("there must be some element of joint behavior, such as collaboration or working under common direction").

Therefore, even if we stay in Aculon's fictional world where Electrolab had not already invented everything in its patent claims, and even if Aculon submits enough testimony to overcome its "heavy burden" to prove joint inventorship, Aculon's case still fails. It has no corroborating evidence to pass a rule of reason test with a high bar requiring clear and convincing evidence. *See*, *Linear*, 379 F.3d at 1316, 1327-29 (affirming district court grant of summary judgment of no joint inventorship where the corroborating evidence that was submitted was not substantial enough to raise a genuine issue of material fact).

### D.   Aculon's joint inventorship claims are barred by the statute of limitations.

Aculon became aware of Electrolab's then-pending regular patent application in December 2015. Drees at ¶ 50. Shortly after seeing the regular patent application, Aculon abruptly broke off from supplying NC-SLO to Electrolab. Drees at ¶¶ 42, 50. Beginning in April 2016, Aculon sent multiple letters and emails to Electrolab, to Electrolab's outside patent counsel, and to the USPTO contesting the inventorship of Electrolab's then-pending application. Drees at ¶¶ 46-53 and Exs. 41-47. The letters leave no doubt that Aculon was fully aware of its joint inventorship claim in 2016. Drees Exs. 41-47. Aculon augmented its letter writing campaign by filing its own patent application on July 15, 2016. Drees at ¶ 54 and Ex. 48. Aculon's application had claims copied from Electrolab's patent application but adding the use of glycol as a solvent and adding its two employees, Dr. Hanson and Mr. Hughes, as joint inventors along with Electrolab's inventors. Drees at ¶ 54 and Ex. 48. Electrolab removed all glycol limitations from its then-pending patent

claims and the '754 patent issued, without glycol in the lone claim 1, on October 25, 2016. Drees at ¶ 56. That patent had the same style of claim limitations that Aculon alleges it invented in the six other Electrolab patents challenged here. *See, e.g.*, Drees at ¶¶ 6-10 and Exs. 4 (patent issued June 27, 2017) and 5 (patent issued August 28, 2018). Electrolab's two CIP patent applications published on May 24, 2018 and July 12, 2018. Drees at ¶¶ 12, 14 and Exs. 8, 10. Aculon was clearly on notice that Electrolab was continuing to seek and obtain issued patent claims on inventions that Aculon now alleges to have jointly invented.

The Aculon application with claims directed to a glycol-based carrier issued as a patent on August 21, 2018. Drees at ¶ 54 and Ex. 48. It is assigned jointly to Aculon and Electrolab. Drees at ¶ 54 and Ex. 48. During the prosecution of that Aculon application, the joint inventorship issues re-surfaced in the USPTO. On February 8, 2018, the USPTO told Aculon and its patent attorney, Blynn Shideler, that the inventorship "[d]isputes arising from the applications or resulting patents should be resolved in an appropriate forum, such as a court of competent jurisdiction, outside of patent application prosecution at the USPTO." Drees at ¶ 57 and Ex. 49. On July 12, 2018 Mr. Shideler responded that "[t]he undersigned [Mr. Shideler] believes that Electrolab, and possibly the three [Electrolab] inventors, have a disagreement with the [Aculon] inventors of this application, namely they disagree with the inclusion of the co-inventors that were employees of Aculon. . . . [I]t seems clear [to Aculon and Mr. Shideler] it is actually an inventorship dispute. . . . Aculon strongly disagrees with Electrolab's inventorship (and/or ownership) assertions, and looks forward to proving inventorship in a proper forum for this and likely other patent properties." Drees at ¶ 58 and Ex. 50.

What is undeniable here is that by August 28, 2018, more than four years before this lawsuit was filed: (1) Aculon was aware of Electrolab's patent disclosures and claim language that it now

asserts to have co-invented, (2) Aculon was fully cognizant of its inventorship dispute with Electrolab, (3) Aculon had affirmatively raised its joint inventorship dispute with Electrolab and with the USPTO many times, (4) Aculon was aware that Electrolab had received three issued patents with claims having limitations that Aculon now alleges to have jointly invented, (5) Aculon was aware that Electrolab was seeking two more of the original five patents and the two CIP patents that contained the same "inventive contributions" that Aculon says it jointly invented, (6) Aculon had obtained the jointly owned glycol patent, (7) Aculon and its attorney Mr. Shideler had been told by the USPTO to take its inventorship disputes to court, and (8) Aculon, through its attorney Mr. Shideler, had told the USPTO that Aculon looked forward to taking the inventorship disputes to court. At the very latest, by this August 28, 2018 date the tik-tock of the limitations clock started running.

Aculon's First Cause of Action for correction of inventorship is lodged under 35 U.S.C. § 256. FAC at ¶¶ 1, 256 (ECF 47). The relevant statute of limitations is found at 28 U.S.C. § 1658(a) which provides that "a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues." The date of enactment of 28 U.S.C. § 1658(a) was December 1, 1990. Pub. L. 101-650 title III. The applicable correction of inventorship statute, 35 U.S.C. § 256, was enacted with the America Invents Act ("AIA"), Pub. L. 112-29. The AIA was enacted September 16, 2011 and 35 U.S.C. § 256 became effective on September 16, 2012, *id.*, both of which are after December 1, 1990.[7] Therefore, 28 U.S.C. § 1658(a) applies here. *See, Jones v. R.R. Donnelley &*

---

[7] Although some of the patents at issue here are pre-AIA patents, the pre-AIA version of 35 U.S.C. § 256 is "***Not applicable*** *to proceedings commenced on or after September 16, 2012.*" 35 U.S.C. § 256 Editor Note (emphasis in original). The proceeding at bar was commenced on September 2, 2022 which is after September 16, 2012, making the pre-AIA version of 35 U.S.C. § 256 inapplicable.

*Sons Co.*, 541 U.S. 369, 370, 380-84 (2004) (discussing federal "catchall 4-year statute of limitations"). Electrolab raised the statute of limitations defense in its Answer, Defendants' Answer, Fourth Defense (¶ 4) (ECF 49), thus satisfying Fed. R. Civ. P. 12(b).

The statute of limitations ran out on August 28, 2022 *at the latest*. Aculon did not file its First Cause of Action for correction of inventorship until September 2, 2022. (ECF 1). Aculon's First Cause of Action is time-barred by the statute of limitations.

## V.     ABSENCE OF A GENUINE DISPUTE COMPELS SUMMARY JUDGMENT

Summary judgment should be granted when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-52 (1986) (emphasis in original); *also see*, *Continental Can Co. USA v. Monsanto Co.*, 948 F.2d 1264, 1265 (Fed. Cir. 1991). Said another way, the dispute must be "genuine," and that means that the non-movant must present enough evidence such that, in the district court's view, "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "If the [non-movant's] evidence is merely colorable, or is not *significantly probative*, summary judgment may be granted." *Id*. at 249-50 (emphasis added) (internal citations omitted). The party moving for summary judgment must demonstrate the absence of any material fact that is genuinely disputed, but that party does not need to negate the elements of the nonmovant's case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1997). A court should not assume that the nonmoving party would provide the necessary facts at trial. *Id*.

### VI.    CONCLUSION

Aculon should never have filed this case for correction of inventorship. It should have investigated in good faith whether everything in the issued claims of Electrolab's five original patents was found in the February 28, 2013 provisional patent application. That information was publicly available to Aculon in a government record they have known about since December 2015. Aculon cannot present testimony that it contributed anything to the issued <u>claims</u> in Electrolab's seven patents. Aculon cannot present testimony that it engaged in a joint collaborative *inventive* effort with any of the three inventors on Electrolab's five original patents or the four inventor's on Electrolab's two CIP patents. Aculon produced no *corroborating* evidence that it jointly invented anything in Electrolab's issued patent claims – evidence that Aculon's attorney should have demanded to see before filing suit. The action is clearly time-barred by the 4-year statute of limitations, which Aculon's attorney also should have recognized since the USPTO told him to take the long-simmering inventorship dispute to court in February 2018. Aculon's attorneys may or may not have been fooled by their client's newly fabricated inventorship testimony, but the absence of corroborating evidence and the certainty that any inventorship dispute was old and time-barred should have stopped them from filing this suit. The law requires Aculon to meet a "heavy burden" to prove joint inventorship by "clear and convincing evidence." Late-raised and uncorroborated charlatan testimony about an irrelevant fact is not nearly enough to support filing this lawsuit.

The reason Aculon's inventorship claims re-emerged when they did has no connection with the merits of this case. Aculon needed a reason to stop Defendant e9's patent infringement suit against an Aculon customer. E9 learned of the customer's infringement in May 2022 and filed suit in Corpus Christi for infringement of three of the five original patents on July 26, 2022. Drees

at ¶ 60. Instead of intervening in that case under Fed. R. Civ. P. 24(a)(2), Aculon hatched a scheme to halt it altogether. Aculon decided to dust off and file its long dormant joint-inventorship claims in this case in San Diego, five weeks later on September 2, 2022, and then immediately have its customer plead e9's lack of standing in the Corpus Christi infringement suit *based upon Aculon's filing of this suit in San Diego*. Drees at ¶ 60. The Corpus Christi suit was stayed in November 2022 because of that court's concern about e9's standing that would be lacking if Aculon co-owned the patents. Drees at ¶ 60. Filing an unfounded complaint to stop a legitimate lawsuit is an abuse of the judicial system.

This Court has the power and the obligation to stop Aculon's frivolous and abusive joint inventorship claims in the interest of justice for Electrolab, whose patent infringement lawsuit was derailed, whose ability to enforce its patents against other infringers is stymied, whose business suffers from its attorneys' fees burden, and whose time is being wasted by Aculon's absurd claim to have, after the fact, invented the same thing that Electrolab disclosed to them. Aculon's desire to waste a week or two of eight or nine jurors' time to listen to its joint-inventor nonsense is preposterous. Summary judgment should be granted – and quickly.

Date:  January 29, 2024

Respectfully submitted,

*/s/ Michael E. Wilson*
Attorney-In-Charge
Texas Bar No. 21704650
**MIKE WILSON LAW, PLLC**
1223 Commercial Street
Bellingham, Washington  98225
Tel:  (360) 671-8833
Fax:  (360) 524-4393
E-mail:  Mike@MikeWilson.Law

and,

**DYKEMA GOSSETT PLLC**
J. Daniel Harkins
Attorney-In-Charge
Texas Bar No. 09008990
Email:  DHarkins@dykema.com
Ryan D. Borelo
Texas Bar No. 24118813
Email:  RBorelo@dykema.com
112 East Pecan Street, Suite 1800
San Antonio, Texas  78205
Tel: (210) 554-5500
Fax: (210) 226-8395

Abirami Gnanadesigan (*Pro Hac Vice*)
Email: AGnanadesigan@dykema.com
444 South Flower Street, Suite 2200
Los Angeles, California
Tel: (213) 457-1800
Fax: (213) 457-1850

**ATTORNEYS FOR DEFENDANTS**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on January 29, 2024 I served the foregoing document on Plaintiff's counsel by email in accordance with the parties' agreement by electronically transmitting it to John.Cave@gunn-lee.com,          Julie.Bell@gunn-lee.com,          Brandon.Cook@gunn-lee.com, REspinoza@gunn-lee.com, and Blynn@blklawgroup.com.

*/s/ Michael E. Wilson*